# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

MOUNTAINTRUE, SIERRA CLUB,
CENTER FOR BIOLOGICAL
DIVERSITY, and DEFENDERS OF
WILDLIFE, *et al.*

      Plaintiffs,

      v.

UNITED STATES FOREST SERVICE,
and JAMES MELONAS, in his official
capacity as Forest Supervisor for the
National Forests of North Carolina,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:25-cv-91-MR-WCM

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     STANDARD OF REVIEW ...............................................................................2

III.    ARGUMENT ......................................................................................................3

        A.      Plaintiffs challenge is not ripe.................................................................4

                1.      Plaintiffs' claims are not fit for review ......................................5

                2.      The hardship-to-parties factor also counsels that Plaintiffs'
                        facial challenge to the Forest Plan is not ripe ...........................8

        B.      Without a concrete, site-specific application of the Forest Plan,
                Plaintiffs lack standing .......................................................................13

IV.     CONCLUSION.................................................................................................18

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                                    i

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 2 of 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ..................................................................... 4, 5, 8

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ...............................................................14

*Bishop v. Bartlett*,
575 F.3d 419 (4th Cir. 2009) .................................................................3

*Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.*,
53 F.4th 286 (4th Cir. 2022) .................................................................3

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013) ...................................................................... 14, 17

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) .................................................................4

*Evans v. B.F. Perkins Co.*,
166 F.3d 642 (4th Cir. 1999) .............................................................2, 3

*Idaho Cons. League v. Mumma*,
956 F.2d 1508 (9th Cir. 1992) ........................................................ 11, 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...........................................................................13

*Lujan v. Nat'l Wildlife Fed'n* (*NWF*),
497 U.S. 871 (1998) ........................................................................5, 13

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803 (2003) .............................................................................5

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998) ...................................................................... *passim*

*Reg'l Mgmt. Corp. v. Legal Servs. Corp.*,
186 F.3d 457 (4th Cir. 1999) .............................................................9, 10

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ...............................................................13

*Defs.' Br. in Supp. of Mot. to Dismiss*                                    ii

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 3 of 25

*Scoggins v. Lee's Crossing Homeowners Ass'n*,
   718 F.3d 262 (4th Cir. 2013) ................................................................4

*Sierra Club, Inc. v. United States Forest Serv.*,
   897 F.3d 582 (4th Cir. 2018) ................................................................1

*South Carolina v. United States*,
   912 F.3d 720 (4th Cir. 2019) ...........................................................4, 14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................... 2, 14, 15, 17, 18

*Whitaker v. Monroe Staffing Servs., LLC*,
   42 F.4th 200 (4th Cir. 2022) ................................................................4

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ...............................................................................17

*Wild Virginia v. Council on Environmental Quality*,
   56 F.4th 281 (4th Cir. 2022) ................................................... *passim*


Statutes

16 U.S.C. § 1604(a) ......................................................................................1

16 U.S.C. § 1604(i) ...........................................................................1, 11, 16

5 U.S.C. § 551(4) ..........................................................................................5

5 U.S.C. § 702 ...............................................................................................4

5 U.S.C. § 704 ...............................................................................................4


Regulations

36 C.F.R. § 220.4(a) .....................................................................................6

36 C.F.R. § 220.4(b) .....................................................................................7

36 C.F.R. § 220.4(b)(2) ................................................................................7

36 C.F.R. § 220.4(c) .....................................................................................7

36 C.F.R. § 220.4(d) .....................................................................................6

*Defs.' Br. in Supp. of Mot. to Dismiss*                      iii

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 4 of 25

36 C.F.R. § 220.4(e) ................................................................................... 7

36 C.F.R. § 220.5(g) ................................................................................... 7

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                                                iv

Case 1:25-cv-00091-MR-WCM     Document 10     Filed 05/08/25     Page 5 of 25

# I.     INTRODUCTION

The National Forest Management Act (NFMA) establishes a two-step procedure for managing National Forest System lands. 16 U.S.C. § 1604(a), (i); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 729-30 (1998); *Sierra Club, Inc. v. U.S. Forest Serv.*, 897 F.3d 582, 600 (4th Cir. 2018). First, the Forest Service must "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a). Forest plans "guide all natural resource management activities" and "must take both environmental and commercial goals into account." *Ohio Forestry*, 523 U.S. at 729. Second, the Forest Service must ensure that all "[r]esource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands [are] consistent with the [forest plan]." 16 U.S.C. § 1604(i). A forest plan "does not itself authorize the cutting of any trees" or any other site-specific action. *Ohio Forestry*, 523 U.S. at 729. The site-specific action occurs at the second step of NFMA's two-step procedure. 16 U.S.C. § 1604(i).

This action challenges the first step of NFMA's two-step procedure. In 2023, the United States Forest Service issued the revised land and resource management plan (Forest Plan) for the Nantahala and Pisgah National Forests (Forests). Complaint ¶ 1, ECF No. 1 (Compl.). These two Forests are in western North Carolina and are managed as a single unit. *Id.* ¶ 2. The Complaint does not

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                    1

Case 1:25-cv-00091-MR-WCM     Document 10     Filed 05/08/25     Page 6 of 25

challenge any site-specific action that authorizes the use of the Forests under the Forest Plan.

Under well-established principles, the Court lacks subject matter jurisdiction. First, Plaintiffs' challenge is not ripe for review because it is a facial challenge to the Forest Plan. This is the same issue the Supreme Court decided in *Ohio Forestry*, 523 U.S. at 732-37, and like another facial challenge the Fourth Circuit rejected in *Wild Virginia v. Council on Environmental Quality*, 56 F.4th 281, 296-99 (4th Cir. 2022). Second, because there is no site-specific action, Plaintiffs have not met their burden to demonstrate an injury-in-fact required to establish Article III jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-94 (2009); *Wild Virginia*, 56 F.4th at 299.

Plaintiffs' challenge to the Forest Plan is justiciable only in the context of a specific application of the Forest Plan. That is not the situation here. The Court should dismiss this action in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.      <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges subject matter jurisdiction. Plaintiffs bear the burden of establishing subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant files a motion under Rule 12(b)(1)

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                                 2

Case 1:25-cv-00091-MR-WCM     Document 10     Filed 05/08/25     Page 7 of 25

challenging subject-matter jurisdiction and relying simply on the allegations of the complaint, the court must take the jurisdictional facts alleged as true – as in the case of a motion filed under Rule 12(b)(6) – and determine, as a matter of law, whether the court has jurisdiction." *Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.*, 53 F.4th 286, 292 (4th Cir. 2022). If the material jurisdictional facts are not in dispute, and the moving party is entitled to judgment as a matter of law, the Court should grant the Rule 12(b)(1) motion to dismiss. *Evans*, 166 F.3d at 647.

## III. <u>ARGUMENT</u>

Article III of the United States Constitution limits federal court jurisdiction to "Cases" and "Controversies." *See Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). Well-established Article III principles as applied in the context of review under the Administrative Procedure Act (APA) – and as set forth in numerous Supreme Court cases and most recently by the Fourth Circuit in *Wild Virginia* – demonstrate that Plaintiffs' facial challenge is not justiciable because it is not ripe and because Plaintiffs lack standing. Plaintiffs' challenge is justiciable only in the context of a challenge to a specific application of the Forest Plan that causes actual, concrete "real world" harm. Plaintiffs have not presented that kind of challenge, and the Court should dismiss this case for lack of jurisdiction.

**A.** **<u>Plaintiffs challenge is not ripe.</u>**

Plaintiffs' claims are not ripe for judicial review because they challenge no site-specific actions authorized under the Forest Plan.

The doctrine of ripeness "originates in the 'case or controversy' constraint of Article III, and presents a threshold question of justiciability." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (cleaned up). "[R]ipeness is a question of subject matter jurisdiction." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). A case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (cleaned up). The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *South Carolina*, 912 F.3d at 730 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). The plaintiff bears the burden to establish ripeness. *Whitaker v. Monroe Staffing Servs., LLC,* 42 F.4th 200, 206 (4th Cir. 2022).

Plaintiffs allege this Court has jurisdiction under the APA. Compl. ¶¶ 15 (citing 5 U.S.C. § 702), 16 (citing 5 U.S.C. § 704). To determine whether an

administrative action is ripe for judicial review under the APA, courts evaluate (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding review. *Abbott Labs.*, 387 U.S. at 149; *Wild Virginia*, 56 F.4th at 294.

1. Plaintiffs' claims are not fit for review.

Under *Abbott Labs*' first prong, a challenge to a "rule" of general applicability and future effect, such as the Forest Plan here, is presumed not to be fit for review until the rule has been applied in a concrete manner threatening imminent harm. *See Lujan v. Nat'l Wildlife Fed'n* (*NWF*), 497 U.S. 871, 891 (1998); 5 U.S.C. § 551(4) (defining rule). In *NWF*, in rejecting a programmatic challenge to the Bureau of Land Management's (BLM) rules for land withdrawal, the Supreme Court explained that

> Absent [a pre-implementation provision]…a regulation is not ordinarily considered the type of agency action "ripe" for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

497 U.S. at 891; *see also Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (same holding in the context of notice-and-comment rulemaking). Under these principles, the Forest Plan is subject to review only within a challenge to a specific Forest Service project issued under the Forest Plan to which Plaintiffs object.

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                      5

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 10 of 25

Following these principles, in *Ohio Forestry*, the Supreme Court held that, in the absence of a statute allowing "preimplementation judicial review of forest plans," a challenge is ripe only in the context of an application of the plan's provisions in agency actions approving specific projects. 523 U.S. at 736-37.

The same is true here. Plaintiffs' challenge to the Forest Plan would be ripe only in the context of a site-specific application of the Forest Plan that threatens Plaintiffs' imminent, concrete harm. *Ohio Forestry*, 523 U.S. at 734; *Wild Virginia*, 56 F.4th at 297. While the Complaint alludes to specific projects, it neither challenges a specific project nor provides any detail how these projects threaten imminent, concrete harm. *See, e.g.*, Compl. ¶¶ 11, 246.

In *Wild Virginia*, the Fourth Circuit rejected as unripe a challenge to a final rule because the rule was "several steps removed from the type of *specific* agency action related to a *specific* project seemingly contemplated by *Ohio Forestry*'s statement." 56 F.4th at 297. As in *Wild Virginia* and *Ohio Forestry*, "several steps" remain before there is a specific final agency action related to a specific project subject to judicial review. Those steps include:

- Identifying a specific proposed action subject to National Environmental Policy Act (NEPA) requirements, 36 C.F.R. § 220.4(a);

- Identifying the proposed action in the Forest Service's Schedule of Proposed Actions (SOPA), 36 C.F.R. § 220.4(d);

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                                6

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 11 of 25

- Scoping and other public engagement for the proposed action, 36 C.F.R. § 220.4(e);

- Integrated agency review and decisionmaking of the proposed action, 36 C.F.R. § 220.4(c); *see also id.* § 220.5 (environmental impact statement (EIS)), *id.* § 220.6 (categorical exclusion), *id.* § 220.7 (environmental assessment (EA)); and

- A final decision authorizing a site-specific application of the Forest Plan, 36 C.F.R. § 220.5(g) (record of decision for an EIS), *id.* § 220.6(e) (decision memo for a CE), *id.* § 220.7(c) (decision notice for an EA).[1]

*Ohio Forestry* is thus directly on point: before the Forest Service can apply a provision of the Forest Plan, "it must focus upon a particular site, propose a specific [] method, prepare an environmental review, permit the public an opportunity to be heard, and (if challenged) justify the proposal in court." 523 U.S. at 734; *see also id.* at 729-31 (detailing the steps required "before the Forest Service can permit any logging."). As in *Ohio Forestry*, Plaintiffs "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent

---

[1] In rare circumstances, the Forest Service's NEPA regulations allow for emergency alternative arrangements for urgently needed actions before preparing a NEPA analysis and required documentation. 36 C.F.R. § 220.4(b). Emergency responses still require a decision authorizing their use that would be subject to judicial review. *See* 36 C.F.R. § 220.4(b)(2), (3).

and more certain." *Id.* at 734; *Wild Virginia*, 56 F.4th at 302 ("Plaintiffs will be able to challenge the 2020 Rule in the context of specific projects if and when a final decision that threatens actual imminent harm to Plaintiffs or their members occurs.") (quotation omitted).

2.   <u>The hardship-to-parties factor also counsels that Plaintiffs' facial challenge to the Forest Plan is not ripe.</u>

The "hardship to the parties" factor also favors deferring judicial review until the Forest Plan is applied in a concrete setting. *Abbott Labs.*, 387 U.S. at 149. In weighing the relative hardships, this Court should apply *Ohio Forestry* to find that this case is unripe.

In *Ohio Forestry*, the Court found that waiting for a concrete application of the forest plan would not cause a hardship to the plaintiffs. 523 U.S. at 733-34. The same principles apply here. Plaintiffs face no hardship from waiting to pursue their claims through a challenge to a specific application of the Forest Plan. Like the forest plan in *Ohio Forestry*, this Forest Plan does not govern conduct by Plaintiffs and thus has no impact on Plaintiffs until it is applied: the Forest Plan does not "command anyone to do anything or to refrain from doing anything"; "grant, withhold, or modify any formal legal license, power, or authority"; "subject anyone to any civil or criminal liability"; or create "legal rights or obligations." *Ohio Forestry*, 523 U.S. at 733. The Forest Plan may impact Plaintiffs only when applied to a site-specific action that affects Plaintiffs' interests. *Ohio Forestry*, 523

*Defs.' Br. in Supp. of Mot. to Dismiss*                                         8

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 13 of 25

U.S. at 733-34. At that point, Plaintiffs can seek judicial review of the specific action and ask the Court to set it aside because the action relied on the (allegedly flawed) Forest Plan. *Ohio Forestry*, 523 U.S. at 734 (Plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain. Any such later challenge might also include a challenge to the lawfulness of the present Plan if (but only if) the present Plan then matters…."); *Wild Virginia*, 56 F.4th at 297 ("Plaintiffs can bring a challenge to later agency actions…'at a time when harm is more imminent and more certain.'") (citing *Ohio Forestry*, 523 U.S. at 734).

Plaintiffs *Ohio Forestry* also held the case was not ripe because immediate judicial review could "hinder agency efforts to refine [their] policies." 523 U.S. at 735. Here too, immediate facial review of the Forest Plan would cause real hardship to the Forest Service. *Id.*; *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) ("[F]itness for judicial decision" turns in part on "the agency's interest in crystallizing its policy before that policy is subject to review." (quotation omitted)). Before the Forest Plan can be applied to site-specific actions, the Forest Service must determine how to apply them. In the context of site-specific applications, the Forest Service may interpret and apply the Forest Plan in a manner that avoids Plaintiffs' speculative harms. Indeed, Plaintiffs refer to the "upcoming Nantahala Mountains Project" and attach as an exhibit a letter to the

*Defs.' Br. in Supp. of Mot. to Dismiss*                                    9

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 14 of 25

objectors on the project. Compl. ¶ 11; ECF No. 1-1. The allegation itself shows

there is no final, judicially reviewable decision on the project, and the letter

contains instructions to the Forest to "[u]pdate the Final Environmental

Assessment to include additional cumulative effects analysis in the Timber

Management resource area." ECF No. 1-1 at 4. This letter shows the Forest Service

is still finalizing its analysis of the Nantahala Mountains Project. *Reg'l Mgmt.*

*Corp.*, 186 F.3d at 465.[2]

Plaintiffs allege three reasons why the Court should review the Forest Plan

now, but none surmount *Ohio Forestry*'s holding that facial challenges to forest

plans are not ripe. Plaintiffs first complain about three projects "that have reached

or will imminently reach a decision." Compl. ¶ 246; *see id*. ¶¶ 11, 247. Plaintiffs

identify the Southside Project (*id.* ¶¶ 11, 256), but they (and another organization)

voluntarily dismissed their challenge to this project. *Chattooga Conservancy v.*

*U.S. Forest Serv.*, No. 1:24-cv-00031-MR-WCM, ECF No. 21 (June 28, 2024 Rule

41(a)(1)(A)(ii) stipulation of dismissal).[3] Plaintiffs also identify the Nantahala

---

[2] Even if the Forest Service were to issue a final, judicially reviewable decision on
the Nantahala Mountains Project soon, any challenge to that project is not
reviewable through the operative Complaint. Plaintiffs would need to file a new
lawsuit that challenges the site-specific project.

[3] The Southside Project is also irrelevant because the Forest Service authorized it
under the 1987 Forest Plan, not the 2023 Forest Plan challenged here. *See id.*, ECF
No. 1 ¶ 5 (alleging "[t]he Forest Service developed the Southside Project under its

Mountains and GAP Projects (Compl. ¶¶ 11, 246, 247), but there is no final decision for either project. *See* Compl. ¶¶ 11, 246, 247. When there is a final decision on Nantahala Mountains, GAP, or any other project, Plaintiffs may challenge the Forest Plan in the context of a site-specific challenge, provided they can satisfy jurisdictional prerequisites. *Ohio Forestry*, 523 U.S. at 734.

Plaintiffs also complain about the Forest Plan's stated need to create early successional habitat (Compl. ¶¶ 12, 251, 252), but the Forest Plan does not authorize any site-specific actions that create such habitat. 16 U.S.C. § 1604(i) ("[P]lans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."); *Idaho Cons. League v. Mumma*, 956 F.2d 1508, 1512 (9th Cir. 1992) ("Direct implementation of the [forest plan] occurs at a second stage, when individual site-specific projects are proposed and assessed."). Any challenge to how the Forest Plan analyzed early successional habitat can be brought only in the context of a site-specific action that authorizes creation of such habitat. *Ohio Forestry*, 523 U.S. at 734.

Plaintiffs' final complaint is about Executive Order 14,225 which Plaintiffs say, "seek[s] to increase logging on national forest system lands and reduce

---

1987 Forest Plan for the Nantahala–Pisgah National Forests while that plan was being revised.").

*Defs.' Br. in Supp. of Mot. to Dismiss*                                              11

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 16 of 25

opportunities for public comment and participation in logging decisions." Compl. ¶ 13. But this Executive Order does not authorize any site-specific actions, either, and certainly not the fifteen timber sales that Plaintiffs allege pre-date the Executive Order that Plaintiffs were aware of yet chose not to challenge as individual projects. *Id.*

In dicta, *Ohio Forestry* wrote that "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." 523 U.S. at 737. Plaintiffs try to couch their challenge to the Forest Plan by complaining about alleged NEPA deficiencies in the Forest Plan EIS, *see* Compl. ¶¶ 256-342, but this fails to show their claims are ripe. First, by its own terms, the *Ohio Forestry* dicta applied only applied to "a person *with standing*…." 523 U.S. at 737 (emphasis added). As explained below, Plaintiffs lack standing because they fail to demonstrate an injury-in-fact. Second, the Fourth Circuit declined to extend *Ohio Forestry*'s dicta to another type of facial challenge (the promulgation of since repealed NEPA procedures) because "this case is several steps removed from the type of *specific* agency action related to a *specific* project seemingly contemplated by *Ohio Forestry*'s statement." *Wild Virginia*, 56 F.4th at 297. Here too there is no specific agency action related to a specific provision of the Forest Plan.

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                    12

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 17 of 25

Without any site-specific application, Plaintiffs' facial challenge to the Forest Plan is not ripe. While Plaintiffs may prefer to mount one legal challenge against the Forest Plan now rather than to pursue potentially multiple challenges to site-specific decisions, the case-by-case approach "is the traditional, and remains the normal, mode of operation of the courts." *NWF*, 497 U.S. at 894; *Ohio Forestry*, 523 U.S. at 735 (same); *Wild Virginia*, 56 F.4th at 303 ("Such efficiency concerns cannot generate jurisdiction."). The Court should dismiss this action for lack of subject matter jurisdiction. *Ohio Forestry*, 523 U.S. at 736-37; *Wild Virginia*, 56 F.4th at 297.

B.    **Without a concrete, site-specific application of the Forest Plan, Plaintiffs lack standing.**

For similar reasons, Plaintiffs lack Article III standing.

To establish Article III standing, a plaintiff must allege facts showing (1) that it suffered an injury-in-fact, (2) that it is fairly traceable to the defendant's conduct, and (3) that it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The elements of standing must exist at the time the complaint is filed. *Id.* at 570 n.5. To demonstrate associational standing (also known as organizational standing), an organization must show that it has members who "would have standing to sue in their own right." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184

*Defs.' Br. in Supp. of Mot. to Dismiss*                                    13

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 18 of 25

(4th Cir. 2013). As explained below, Plaintiffs fail to meet their burden to establish either representational or associational standing.

Plaintiffs "can demonstrate standing only if application of the regulations by the Government will affect" them in a way that threatens to impose an "'injury in fact' that is concrete and particularized." *Summers*, 555 U.S. at 493-94. That threat of "'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). It also "must be actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493. To meet the imminence requirement, a "threatened injury must be *certainly impending*"; "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409-10 (2013) (citation omitted); *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (explaining that "certainly impending" injury cannot be based on a "highly attenuated chain of possibilities."). Merely increasing the risk of some speculative future harm is not enough. *Clapper*, 568 U.S. at 409-10. Combined, these requirements ensure that the alleged injury is not too speculative for Article III purposes, *see South Carolina*, 912 F.3d at 727 (citing *Clapper*, 568 U.S. at 410), and "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers*, 555 U.S. at 493 (internal quotations omitted).

In *Summers*, the Supreme Court applied these deep-rooted standing principles to a suit brought by environmental organizations challenging the Forest Service's adoption of regulations setting out notice, comment, and administrative appeal procedures for certain future timber projects. 555 U.S. at 490-91. The organizations challenged both the procedural regulations themselves and a particular application of the regulations to a specific Forest Service project. *Id.* at 491. By the time the case came to the Supreme Court, however, the parties had settled their dispute about the specific project, leaving only the plaintiffs' direct facial challenge to the regulations in the abstract. *Id.* at 491-92, 494. The Supreme Court held that the organizations did not have standing to challenge the regulations after the settlement because plaintiffs failed to demonstrate that the government had applied the regulations to any other project that would imminently harm one of their members. *Id.* at 492-96. According to the Supreme Court, there is

> no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action (here, the regulation in the abstract), apart from any concrete application that threatens imminent harm to his interests.

*Id.* at 494. "Such a holding," the Supreme Court continued, "would fly in the face of Article III's injury-in-fact requirement." *Id.*

Just as in *Summers*, this action presents precisely the sort of review – untethered to a concrete factual context – that contravenes Article III's injury-in-

*Defs.' Br. in Supp. of Mot. to Dismiss*                                                                15

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 20 of 25

fact requirement. Plaintiffs assert a litany of speculative concerns that the Forest Plan will result in future approvals of projects that will fail to protect their interests in "water quality, old growth, wildlife habitat, and cultural and recreational resources among other values important to their missions." Compl. ¶ 20; *see also id.* ¶¶ 18, 21-56. Plaintiff MountainTrue alleges the Forest Plan "opens sensitive biological areas to logging" and "destroy[s] areas of the Forests which are beloved by [its] members and staff." *Id.* ¶ 25. Plaintiff Sierra Club alleges the Forest Plan "opens areas to roadbuilding and timber harvest that have qualities and values that are important to [its] members." *Id.* ¶ 35. Plaintiff Center for Biological Diversity alleges its members interests "are threatened by the 2023 Forest Plan's expansion of logging operations and failure to provide meaningfully protective standards that would avoid or minimize harm to biological and recreational hot spots." *Id.* ¶ 41. Plaintiff Defenders of Wildlife alleges the Forest Plan "failed to adopt" certain recommendations and that timber harvest objectives "will cause an imbalance in habitat abundance to the detriment of disturbance-sensitive species." *Id.* ¶ 55.

But the Forest Plan itself does not authorize any site-specific action with on-the-ground effects. 16 U.S.C. § 1604(i); *Idaho Cons. League*, 956 F.2d at 1512. Plaintiffs offer only speculation about how, when, and where the Forest Plan will be applied to hypothetical projects, and how those future applications would result in injury. It is not enough to recite that they are harmed because the existence of

the Forest Plan *could* allegedly cause the Forest Service to apply the Forest Plan to *future* site-specific projects in an attenuated chain of events that *could* lead to environmental, procedural, or informational harm. Even before *Summers*, it was well established that "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). When a site-specific action is authorized under the Forest Plan, Plaintiffs may commence a suit seeking to enjoin that action before any harm materializes. Their fears of harm are speculative and neither concrete nor imminent. Any future harm to Plaintiffs requires "guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413.

There is a vast gap between the "concrete, particularized, and imminent" harms required for standing and Plaintiffs' hypothetical harms premised on the future applications of the Forest Plan. The point is not that a plaintiff must wait until the tree is cut down to have standing. Rather, until a specific final agency action approves the logging of the trees in the place that the plaintiff visits, the harm to the plaintiff remains speculative. Plaintiffs therefore lack Article III standing, and the Court should dismiss this action for lack of subject matter jurisdiction. *Summers*, 555 U.S. at 493-94; *Wild Virginia*, 56 F.4th at 299.

*Defs.' Br. in Supp. of Mot. to Dismiss*                                      17

Case 1:25-cv-00091-MR-WCM    Document 10    Filed 05/08/25    Page 22 of 25

## IV.   **CONCLUSION**

For these reasons, Plaintiffs fail to meet their burden to show that any of their claims are ripe. *Ohio Forestry*, 523 U.S. at 734; *Wild Virginia*, 56 F.4th at 297. Plaintiffs also fail to meet their burden to show they have Article III standing to pursue any of their claims. *Summers*, 555 U.S. at 493-94; *Wild Virginia*, 56 F.4th at 299. The Court should dismiss this entire action under Rule 12(b)(1) for lack of subject matter jurisdiction.

Respectfully submitted on this 8th day of May, 2025.

RUSS FERGUSON
United States Attorney

*/s/ Gill P. Beck*
Gill P. Beck
Assistant United States Attorney
Chief, Civil Division
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
(828) 271-4661
Gill.Beck@usdoj.gov

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/   John P. Tustin*
JOHN P. TUSTIN (TX Bar No. 24056458)

Senior Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:     (202) 305-3022
Fax:         (202) 305-0275

*Attorneys for Defendants*

**<u>CERTIFICATION</u>**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated this 8th day of May, 2025.

*/s/   John P. Tustin*
JOHN P. TUSTIN
